Good morning, your honors. Attorney Darla Mundu for Mr. Thornhill, and preliminarily I need to inform you that my right ear has not popped from the plane ride yet, so if I'm looking that way it's because I have to hear out of this ear, and if you would please just speak a little bit louder for me, I'd appreciate it. Must be old age, whatever. To begin with, I want to start with the judge's ruling on the 414 rule, and the court said that it couldn't rule preliminarily, and I believe it was within the time frame before the trial, that he couldn't rule preliminarily, especially as to the fifth factor in LeMay, and that he would wait until the government has introduced other evidence at trial. And then the court went on to say a few moments later that the government may make an application to the court to admit the prior conviction after it has introduced its other evidence at trial, or at any other time. That's not what the fifth LeMay factor says. It either means what it says after you hear testimony, or it doesn't mean anything. And this is especially – Well, counsel, as I understand it, the court ruled before trial started, contrary to what it had previously said it would do. Can you help me? What information had been provided to the court between the original statement that you were reciting and the day that the ruling was issued? To my knowledge, no other additional information. And she filed trial briefs, jury instructions, proposed witnesses and exhibits? To my knowledge, no, because the prior conviction was allowed in based on the fact that the court had excluded the voice message and pictures outside of the indictment. So those – But nothing new had been provided to the court? To my knowledge, no. All right. Okay. So based on that – Well, now, I guess the next question that I ask is, how would then the district court's ruling on the Fifth LeMay factor have changed if the court had waited until the close of the government's case? I mean, I looked at what was in front of the district court at the time they gave this ruling, written ruling that you talk about. I didn't find anything at the time he changed that ruling the very next day. Then I looked at what happened during the trial, and I'm saying, what would have happened to the court's analysis given what happened at trial if he'd waited until the close of the trial? Was there anything that was new or different or unthought of or came out of the blue that the court would not have any idea was going to be there? Because I didn't find any. So I'm really asking for you to help me because I understand what the LeMay factor is about, but I'm trying to say, if the evidence produced by the government essentially was the same as the evidence that the parties represented to the district court would have been produced, then what was the error in saying at the time, at the beginning of the trial, that we are going to let it in? Well, doesn't the Fifth LeMay factor intimate or compel that you have to listen to testimony? Well, I understand. That's why I said what was different, because I'm not suggesting to myself that the letting it in wasn't prejudicial. What I'm suggesting by my question is, I looked at what the district court said to begin with. I looked at the change, as Judge Tallman's tried to point out. What came that caused this change? I couldn't find anything. So then I said, okay, let's look at the trial. Did that change anything that the district court had in front of it when it made this decision? I mean, it had all the testimony. It had what it was going to get. It wasn't given the way it was going to be given, because questions and answers cause different things to happen. But in this particular case, I couldn't even find that the then what had already been presented to the court when he made the decision. And therefore, so there's error. Why isn't it harmless error? That's my question. Absolutely. Correct. Because if you look at the testimony of the agent, he testified that Mr. Thornhill admitted to owning the phone then, at the time of the interview, he admitted that he wrote the list of web addresses. But his defense was that that stuff was on the phone before he got it. That's exactly what the district court based its determination on, right? That it was helpful or practically necessary because the defense disputes the position of the phone when images of child pornography were downloaded. And so the district court concluded it was practically necessary for showing or helpful for showing intent. I don't think the prior conviction. I think the prior conviction was prejudicial because they had him. Well, that goes to the merits. Your first issue was, did the district court err in not listening to the testimony? Again, to me, the LeMay factors is a decision. It's not a statute. We're following its guidance to subsequent panels, so we don't read it the same way we read a statute. But here, the court didn't hear testimony, but its basis for finding the fifth LeMay factor was exactly what you were saying now, was what was shown at trial, the defendant's defense. So why was there any error in not listening? I'm glad Judge Ikuda asked it. It may be clearer. She's better at that. I'm just trying to make sure that you understand. That's why I'm glad she asked you that because I don't think you answered my question. Okay. I believe you're asking me to explain the prejudice from not only him admitting it before trial, but why did it come in at all? How was it prejudicial? No. I think the question is, would the analysis have been any different if the court had waited until actually hearing the testimony that was proffered before making the ruling? And I think what we're suggesting in our questioning is we can't see how the decision would have been any different, whether it was made the day before the jury was impaneled or after all of the government's coming in. Doesn't that necessarily entail the judge adopting maybe police reports or interview records of what the agent is going to say before he testifies under oath? Because when he testified, he testified about the fact that the defendant admitted owning the phone, writing the list, but that he didn't own the phone when the things were... Just one more time. Even if we agree there was a procedural error in what the court did, how does that affect the ruling? Why is the ruling affected? Because... Why would there be a different ruling had there been a case where he was charged with sexual assault on a minor, but his ex-wife testified that she had caught him once masturbating in front of a picture of a young boy. Yes, the boy was clothed. And the court said in that case that, first off, looking at pictures is incest is particularly egregious to put before a jury of a defendant whose evidence is coming in under 414. It's the fact that the prior conviction was incest that makes the ruling not harmless. We have just a few seconds left. Do you want to save them for rebuttal? Yes, please. Good morning, and may it please the court. James Klugman on behalf of the United States. The district court judge in this case looked at the five factors that this court has said a trial court needs to consider when deciding whether or not to admit this type of prior child molestation evidence. The district court judge found that all five of those factors were neutral or favored admission. I don't believe there's any real challenge to the substance of his decision with respect to any of those five factors. Well, I think she did challenge the substance relying on Pearson, did she not? That's what I heard your opponent to say. So the Preston case, I think, is the inverse of this situation. Preston as well. Oh, Preston, I'm sorry. Yes, it's also a cumulative error case. It wasn't just focusing on this or saying that error would require reversal. Well, the problem comes, and I guess I'm going to ask you the same question that they have to follow up so you'll know what I'm asking. I'm glad to let them do it. But if I read the fifth LeMay factor, it plainly says that you consider the necessity of the evidence beyond testimonies already offered at trial. Nothing had been offered at trial, not one thing. And he made a ruling on the fifth LeMay factor, which seems without question and that he ignored the fifth factor. Now, my question is that, why didn't you object? Your Honor, there are three reasons why I don't think that that would require reversal in this case. The first is, it's not just that the prosecutor didn't object. The defense attorney also didn't object. I know, but I'm asking you, why didn't the prosecutor object? It's absolutely clear, reading LeMay, what has to be. It seems to me the prosecutor should have objected. That's the prosecutor's burden as the, if you will, attorney for the people. So, Your Honor, I would respectfully disagree that the LeMay, that that fifth factor does actually preclude this from being dealt with in Lemonade. Where do you find that authority? I find it first in Glanzer, which is where that language actually comes from. In LeMay, they were quoting Glanzer directly. In Glanzer, it appears the judge did decide this in Lemonade. In addition, Glanzer, after it says testimonies already offered at trial, has a citation to United States v. Guardia, which is a Tenth Circuit case reported at 135 F. 3rd, 1326. That case, the judge dealt with it in Lemonade. Glanzer also went on to say that it was adopting the reasoning of the Tenth and Eighth Circuits as a rule of law for this circuit. In the Preston case as well, it was dealt with in Lemonade. I understand, but it seems to me that when you focus in, and I'm not sure that the focusing in in any of those cases you've talked to me about before, there was a focus with LeMay, putting the language dead on as to what needed to happen, and it didn't happen here. Well, in LeMay, that language is offered as a quotation from another case where it also didn't happen. There may be cases, and that is what happened in LeMay, the judge or the rest of the evidence. Do you agree that there's nothing that changed between the first and second days of trial, the first decision when the district court made the written decision, the second day he just absolutely said it's in, and that doesn't seem to me anything else happened between those two days. Do you agree with that? I do not agree that nothing had changed. What happened? What had changed is the parties had reached a series of evidentiary stipulations. They'd narrowed what the evidence was going to look like. They'd reached a point where essentially they'd agreed that this was going to be a one-witness case with otherwise evidence that was stipulated to or on which the district court had ruled about its incivility. That's enough to allow the court to make this decision without hearing any testimony? I think there are cases where it would not be enough. I think in this case it was enough, and I think there are cases where a judge might have to reconsider that decision after the evidence had been presented, after seeing what the case looked like, but that's not what happened here. The evidence came out through the one witness exactly the way everybody thought it would when this ruling was made. As far as I can tell, there was only one objection that was offered during the testimony. It was to the form of a question that the prosecutor offered towards the end of his redirect that he rephrased and went on. Well then let me ask you another question. If in fact I'm going to find this is error based on Lemay, is there a harmless error finding available here? Can we possibly find a harmless error on the basis of overwhelming evidence? So in terms of whether this evidence... I looked at the evidence. I don't think it was that overwhelming. In terms of whether this evidence came in or not, I don't think you would have been able to prove your set of facts. I mean I'm saying there was no overwhelming evidence besides this conviction. It was a if not. We are not raising a harmless error argument as far as the admissibility or not of this evidence. In fact, I think there's always going to be a tension if in fact that fifth Lemay factor was met. It was extremely inflammatory and prejudicial. So we're back to whether the district court erred in not having heard the evidence before he let it in. Your honor, I do not agree that this was prejudicial or inflammatory. I agree it was reasonably necessary to the government's case. I don't think there's enough evidence to convict without it. Tell me why there is. Your honor, I think there was evidence, certainly a facially sufficient prima facie case without this. I don't think I could argue that it appreciably affect the verdict. It seems to me like then it's inflammatory and prejudicial. Your honor, I think that it had a potential for prejudice as this court has recognized this sort of evidence always does. It also has a potential to be extremely probative. And in fact, because it was so probative, that's why I don't think a harmless error argument is necessarily available here. What was the evidence other than the prior conviction? Well, the evidence was this was in fact the defendant's cell phone. That was stipulated too. There was child pornography on it that would not be readily accessible. He had a list of websites where this child pornography was available. And he admitted to the FBI that he had searched for, I think, naked kids was the word that he had used. And his defense was it was downloaded to his phone when he was somewhere else, right? That's correct. Somehow somebody else must who had access to the phone. And I think the evidence at least allowed for the possibility that there could have been such people that those were really the people who were responsible for it. It's a little bit inconsistent, though, if he acknowledges that he wrote a handwritten list of terms that would be I wasn't the one who downloaded it. It must have been somebody else. Well, that's why I say, Your Honor, I think had Judge Burgess said this evidence wasn't admissible, I don't know that the prosecutor would have thrown up his hands and dismissed the case on the spot. But I do think in light of the overall evidence, it was practically necessary in terms of LeMay to the point that the jury heard he'd previously been convicted of child molestation involving his daughter. That that was the extent of it. The jury received a copy of the judgment and the FBI agent's brief summary of what the judgment actually said. But the judgment just says sexual abuse of a minor, isn't that right? Right. And I think the FBI agent said, I believe that was his daughter or words to that effect. That's all the jury. That is all the jury heard. And that the judgment was actually attached to the prosecutor's motion seeking to admit it. So the judge had heard what this evidence actually was going to look like when he made his ruling. So the third reason why I don't think that reversal would be warranted based on any procedural irregularity that there might be found, in addition to the fact that I don't think the judge was actually required to do that, in addition to the fact that the procedural irregularity as opposed to the substantive decision was harmless in light of the way that this evidence came in and in light of the way the case was litigated. The maybe would be an argument that had the defense attorney said, your honor, you should defer your decision until you see what the evidence should look like. That's what LeMay and Glanzer say, that the judge was required to do that. The defense attorney didn't say that. And I think it's entirely reasonable for... That's why I asked you the question, why didn't the prosecutor do it? Prosecutor had just as much duty to do it as did the defendant. Prosecutor reads LeMay, prosecutor knows what the fifth factor is there. Well, your honor, as I said... To me, you're trying to cast all the burden on the defense, yet the question is very clear. What should you do with the LeMay factor, the fifth? When should it be admitted? It's not unknown to the prosecutor. Your honor, I see I'm over time, but if I can answer that question. I think there are cases where attorneys, prosecutors and defense attorneys can reasonably choose to have this question answered before the trial begins, so that they can strategize their case accordingly. That's what happened in this case. The defense attorney actually asked for an opportunity to revise her opening statement. And then in the government supplemental excerpt of record, pages 68 and 69, she actually objected and said the judge should have ruled even earlier than he actually did. So in fact, not only did not ask the judge to defer his ruling, said he had erred by deferring it as long as he did. So for all of those reasons, I don't see a basis to disturb the conviction here, and I respectfully ask the court to affirm. You have a few seconds left. Well, that was very interesting because he actually made a point for me. The government said that the prior conviction only said sexual abuse, but at trial, the agent said he believed it was his daughter, which meant she didn't have all the evidence before her, before she made the ruling. I don't know why I'm saying she, it's he. Judge Burgess, sorry. He'll be aggravated with you. No, go ahead. Okay. He did not, apparently did not know that, and that is where the prejudice comes in. And the Preston case clearly said that incest has the power to discuss. And when this jury heard that it was his minor daughter, we cannot say they were not swayed by that. We do not know how much that swayed them, but it had the potential to inflict prejudice on the defendant. And had the government not had that, been able to admit that, whether they could have convicted him on the list, on the photos, is an unknown. We don't know that. And I ask that you reverse the conviction. All right. Thank you, Your Honors. I thank both sides for their argument. The case of United States versus Jim Wayne Thornhill is submitted.
judges: Tallman, Ikuta, N.R. Smith